**NOT INTENDED FOR PUBLICATION**

The following constitutes
the order of the court. Signed February 04, 2011

_____
Charles Novack
U.S. Bankruptcy Judge
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>JAVIER R. GUZMAN AND TOSHA F. DJIRBANDEE-RAMOS,<br><br>Debtor(s). | Case No. 05-51833 CN<br>Chapter 13 |
| JAVIER R. GUZMAN AND TOSHA F. DJIRBANDEE-RAMOS,<br><br>Plaintiffs,<br><br>vs.<br><br>RICK PINCH, FRANK O'CONNELL, EIGHT RODRIGUEZ AND DUFFY & GUENTHER, LLC,<br><br>Defendants. | Adversary Proceeding No. 08-5133<br><br>MEMORANDUM DECISION FOLLOWING TRIAL |

On October 27, 2010, this court conducted the trial of the above adversary proceeding, in which plaintiffs asserted equitable lien and fraudulent conveyance claims for relief against defendants. All appearances were noted on the record. Defendants Frank O'Connell, Leigh Rodriguez, and Duffy & Guenther, LLC appeared either pro per or through counsel. This court previously entered the default of defendant Rick Pinch, and Pinch did not appear at trial. Upon consideration of all the evidence and arguments of counsel, the following constitutes this court's findings of fact and conclusions of law under F.R.B.P. 7052(a).

1

This adversary proceeding arises from a judgment entered against defendant Rick Pinch and in favor of plaintiffs Javier Guzman and Tosha Djirbandee-Ramos in Monterey County Superior Court, and the steps that Pinch purportedly took to avoid payment of that judgment. Many of the following facts were admitted by the parties in their Joint Pre-Trial Order, entered on October 19, 2010. In addition, the court admitted into evidence and relied on some of the Monterey County Superior Court discovery requests, responses, and certain court transcripts in preparing its findings of fact. Defendants moved to exclude this evidence on the ground that their admittance into evidence would violate the litigation privilege established by California Civil Code § 47(b). Defendants' motion is denied. The litigation privilege bars tort actions based on communications made in any legislative, judicial or other official proceeding. The claims for relief against defendants are based solely on their receipt of funds that are alleged to have been wrongfully transferred. The court acknowledges the breadth of the litigation privilege. Its purpose is "to afford litigants and witnesses free access to the courts without fear of being harassed subsequently by derivative tort actions, to encourage open channels of communication and zealous advocacy, to promote complete and truthful testimony, to give finality to judgments, and to avoid unending litigation." Rusheen v. Cohen, 37 Cal. 4th 1048, 1063 (2006). The gravamen of Plaintiffs' claims, however, are Pinch's payment of defendants' attorneys fees and retainer. The documents and transcripts introduced into evidence do not constitute the tort at issue. Defendants are not being sued based upon any statement that they made or discovery response that they prepared. Section 47(b) does not create an evidentiary privilege for the documents and statements at issue. "Statements that are otherwise privileged nonetheless may be used in some circumstances to prove the speaker's state of mind [citations omitted.] While section 47(2) ... bars certain tort causes of action which are predicated on a judicial statement or publication itself, the section does not create an evidentiary privilege for such statements." Kashian v. Harriman, 98 Cal. App. 4th 892, 931-32 (2002).

On March 15, 2006, the Superior Court of California, County of Monterey filed its tentative decision after a eight day trial in litigation commenced by plaintiffs Javier Guzman and Tosha
2

Djirbandee-Ramos (collectively, the "Plaintiffs") against Rick Pinch. In its decision, the Superior Court found that Pinch defrauded Plaintiffs when he sold them a Carmel Valley mobile home park in 2003. The Superior Court determined that Plaintiffs had not provided sufficient evidence for it to award compensatory and punitive damages, and it ordered the parties to appear at a March 30, 2006 case management conference to set the matter for an evidentiary hearing on damages. Defendants Frank O'Connell ("O'Connell") and Leigh Rodriguez ("Rodriguez") were the attorneys who represented Pinch during the liability phase of the Superior Court action. Pinch terminated Rodriguez and O'Connell's representation of him in the Superior Court action on or about May 12, 2006. Pinch then retained defendant Duffy & Guenther, LLC to represent him in the Superior Court action, which representation began on or about June 2, 2006. The damages phase of the Superior Court action was held in August 2006, and Pinch vigorously argued that Plaintiffs had suffered little, if any damages from their purchase of the mobile home park. The Superior Court disagreed, and on April 10, 2007, it entered an amended judgment against Pinch for $397,438.00 in compensatory damages, $400,000.00 in punitive damages, $12,591.38 in costs, and $327,975.00 in attorneys fees.

Pinch used some or all of the Carmel Valley property sales proceeds to purchase a mobile home park in Cody, Wyoming. He took title to the Wyoming mobile home park in the name of "Cooper Subdivision LLC," a Wyoming limited liability company ("Cooper LLC"). Pinch was the manager and sole owner of the Cooper LLC.[1] Cooper LLC owned and operated the Wyoming mobile home park when the Superior Court issued its March 15, 2006 tentative decision.

On or about April 17, 2006, Cooper LLC listed the Wyoming mobile home park for sale. Cooper LLC was in contract to sell the property on April 27, 2006, and escrow closed on or about June 13, 2006. Pinch owed Rodriguez $37,750.00 in attorneys fees when he terminated Rodriguez's services on May 12, 2006. To satisfy this debt, Pinch authorized Rodriguez to submit a demand into

---

[1] The court does not know exactly when Cooper LLC took title to the Wyoming mobile park home. The admitted facts in the Joint Pre-trial Order simply stated that the property was purchased "[p]rior to the issuance of the March 15, 2006 tentative decision...."

3

**MEMORANDUM DECISION FOLLOWING TRIAL**

the Cooper LLC sale escrow. The escrow company paid his fees in full on or about June 19, 2006. Pinch owed O'Connell $38,085.00 in attorneys fees when he terminated his services, and he also authorized O'Connell to submit a demand into the Cooper LLC sale escrow, which was paid in full when escrow closed. The evidence also indicated that Pinch paid another Monterey County Superior Court litigation expense from this sale escrow: a $3,989.74 court reporter invoice. O'Connell and Rodriguez testified that their invoices were for reasonable services rendered in the Superior Court litigation, and both knew that their fees were being paid by the Cooper LLC sales escrow. The parties stipulated in the Joint Pre-Trial Order that the $359,626.87 sales balance was wired into Pinch's personal account at First National Bank of Crestview in Florida ("First National"). The evidence also indicated that Pinch moved to Florida at some time in 2006.

Duffy & Guenther filed its substitution of counsel in the Superior Court action on or about June 20, 2006. Its representation was contingent upon its receipt of a substantial retainer, and on June 20, 2006, First National wired $130,000.00 into the firm's attorney-trust account, and wired an additional $15,000.00 into the trust account on June 21, 2006. Plaintiffs did not submit any evidence indicating that the Cooper LLC sales proceeds were the only funds in the First National account when the bank issued the two wire transfers, and Ralph Guenther (a name partner of the firm) testified that his firm did not know where Pinch obtained the money to fund the firm's retainer.

After the Superior Court issued its March 15, 2006 tentative decision, Plaintiffs aggressively conducted discovery to prepare for the damages phase of the case, and also to determine if Pinch was transferring assets in anticipation of a damages award against him. As stated above, the Wyoming mobile home park was sold during this phase of the Superior Court litigation. On March 30, 2006, the Plaintiffs served Pinch with a set of special interrogatories and a demand for production, which, *inter alia*, required Pinch to identify all real property that he (and possibly Cooper LLC) owned and sold in the past five years, and to identify any commercial real property that he presently owned. Pinch verified his interrogatory responses on April 14, 2006, and Rodriguez served the responses on April 24, 2006. Pinch disclosed "his" ownership of the Cooper

4

LLC mobile home park in these responses, but he did not disclose Cooper LLC's recent decision to market the Wyoming mobile home park.[2] Pinch did not disclose the sale of the Wyoming mobile home park until after the sale closed. On June 21, 2006, Pinch executed a verification for supplemental interrogatory responses prepared by his new counsel, Duffy & Guenther, which responses apparently were served on Plaintiffs that same day. Pinch disclosed in these supplemental responses that Cooper LLC had sold the Wyoming mobile home park. He did not, however, disclose the sales price or how Cooper LLC used the sales proceeds.

In the midst of this discovery, Plaintiffs sought to prevent Pinch from disposing of his assets. On April 28, 2006, the Superior Court conducted a preliminary injunction hearing arising from a temporary restraining order which restrained Pinch from disposing of certain assets.[3] The Superior Court did not extend the temporary restraining order, and instead, on or about May 8, 2006, issued an Order To Show Cause (upon Plaintiffs' application) why it should not enjoin Pinch from transferring any real property, including the Wyoming mobile home park. The Superior Court conducted a hearing on its Order To Show Cause on May 12, 2006, and it did not issue an order enjoining Pinch from disposing of the Wyoming real property. The Superior Court agreed with Pinch's argument that California Code of Civil Procedure § 526 authorized it to enjoin the transfer of real property only if that property was the subject of the litigation before it. Since the Wyoming mobile home park was not the subject of the Monterey County Superior Court litigation, it denied Plaintiffs' application to enjoin the transfer of this real property or any other real property that Pinch owned. O'Connell represented Pinch during the May 12, 2006 hearing, and he knew by that time that the Wyoming mobile home park was for sale.[4] In addition, the May 12th court transcript clearly

---

[2] Plaintiffs' set of special interrogatories did not request that Pinch identify property that he or Cooper LLC were presently marketing for sale.

[3] The parties did not submit into evidence the temporary restraining order that was at issue during the April 28, 2006 hearing.

[4] Rodriguez was also aware of the sale by this date. While O'Connell represented Pinch during the hearing, he apparently did not prepare Pinch's discovery responses. Rodriguez signed the discovery responses on Pinch's behalf.

5

1 indicates that O'Connell informed the Superior Court that Pinch was not insolvent and "had a tremendous amount of assets." Regardless, the brunt of his argument was procedural; that California Code of Civil Procedure §526 did not authorize the Superior Court to enjoin Pinch from transferring the Wyoming real property. Indeed, O'Connell hinted during the May 12, 2006 argument that Plaintiffs should proceed by a pre-judgment writ of attachment if they wished to enjoin Pinch from transferring assets.[5]

**I.  THE PAYMENTS TO RODRIGUEZ AND O'CONNELL DID NOT CONSTITUTE FRAUDULENT TRANSFERS**

The Plaintiffs assert that the payments from the Cooper LLC sale escrow to defendants Rodriguez and O'Connell constituted fraudulent conveyances under California's Uniform Fraudulent Transfer Act. This act authorizes a party who has a claim to avoid any "fraudulent" transfer by a person liable on the claim. Cal. Civ. Code § 3439 *et seq*. Civil Code § 3439.04 describes two types of transfers which may form a fraudulent transfer: transfers made with the actual intent to hinder, delay or defraud a creditor of the debtor, and transfers made where the debtor does not receive reasonably equivalent value in exchange. Since the court finds that the defendants' legal services constituted reasonably equivalent value, the court will only address the fraudulent transfer allegations under Civil Code § 3439.04(a)(1). The Plaintiffs must prove their case by a preponderance of the evidence. See Whitehouse v. Six Corp., 40 Cal. App. 4th 527 (1995).[6]

Civil Code § 3439.04(a)(1) provides that a transfer of property by a debtor is fraudulent if the transfer is made with the actual intent to hinder, delay or defraud any creditor of the debtor. Section 3439.04(b) sets forth eleven "badges of fraud" that the court may consider in making its findings of fact under 3439.04(a)(1). The presence of one or more of these "badges" does not create a presumption of fraud, but "merely [constitutes] evidence from which an inference of fraudulent

---

[5]  The evidence suggests that Plaintiffs did not have the funds for the bond required for a pre-judgment writ of attachment.

[6]  It is self-evident that the Plaintiffs had and have a claim against Pinch.

6

intent may be drawn." Wyzard v. Goller, 23 Cal. App. 4th 1183, 1190 (1994). Plaintiffs presented evidence that raised several badges of fraud. For example, Pinch paid Rodriguez and O'Connell after the Superior Court issued its March 15, 2006 tentative decision, and the facts indicate that Pinch may have moved (i.e. "absconded") to Florida in 2006, a state with generous exemption rights. In addition, Plaintiffs presented some evidence (the Monterey County Superior Court's December 11, 2006 amended tentative decision) that Pinch's net worth eventually was far less than the August 2007 Monterey County judgement. Moreover, given the timing of Pinch's discovery responses and some of O'Connell's statements to the Superior Court during the May 12, 2006 preliminary injunction hearing, there is also evidence that Pinch perhaps did not timely disclose the sale of the Wyoming mobile home park.[7] The difficulty with Plaintiffs' claim, however, is that Pinch paid legitimate attorneys fees that were due and owing, and he was not obligated to disclose the actual transfers at issue: the payment of Rodriguez and O'Connell's attorneys fees. The Plaintiffs did not present any evidence that these bills were long overdue or that Pinch contested them in any manner. The evidence also indicates that Pinch used the sale escrow to pay other litigation expenses, including the court reporter's bill. California law allows a debtor to prefer one creditor over another, see Cal. Civ. Code § 3432, and these payments were for attorneys fees that were owed to counsel when Pinch was still vigorously litigating Plaintiffs' entitlement to any damages. This court can just as easily infer that Pinch paid his attorneys to ensure their cooperation with the transition to his new counsel, Duffy & Guenther.[8] Moreover, no direct evidence was

---

[7] One could equally conclude that Pinch was not obligated to disclose the pending sale of the Cooper LLC property when he first responded to the Plaintiffs' set of special interrogatories. Pinch and the buyers were in contract on April 27, 2006, after he submitted his interrogatory responses, and the sale did not close until June 13, 2006. The interrogatories requested information regarding "sales," not property that had been placed on the market or property that was in contract for sale. Pinch did supplement his interrogatory responses a few days after the sale closed to disclose this transfer. While this court does not want to encourage discovery gamesmanship, Pinch appears to have accurately responded to the interrogatory. The court notes that Plaintiffs filed a motion for sanctions with regard to the timing of Pinch's disclosure of the Wyoming mobile home park sale. Plaintiffs did not present any evidence regarding the outcome of this motion.

[8] Plaintiff's counsel sought to question defendants regarding their privileged conversations with Pinch, and argued that the privilege did not apply under California Evidence Code §956. This code section sets forth the "crime/fraud" exception to the attorney-client

7

presented regarding why and when Pinch moved to Florida. Simply, Plaintiffs' burden of proof requires a preponderance of the evidence, and the court concludes that the evidence allows it to equally infer that Pinch paid these attorneys fees for no other reason than that he owed them.[9]

## II. THE PAYMENTS TO DUFFY & GUENTHER WERE NOT FRAUDULENT CONVEYANCES

For similar reasons, the two payments to Duffy & Guenther also did not constitute fraudulent conveyances. While these payments (unlike the Rodriguez and O'Connell payments) were made by Pinch, the preponderance of the evidence does not establish that he made these transfers with the intent to hinder, delay or defraud Plaintiffs. The evidence demonstrates that Pinch retained Duffy & Guenther to represent him in the damages phase of the Monterey County Superior Court action, and that the law firm, not surprisingly, required a substantial retainer. The evidence also established that Pinch did not believe that Plaintiffs were entitled to compensatory or punitive damages, and that he

---

privilege. The court sustained defendants' objections. Section 956 provides that "[t]here is no privilege under this article if the services of the lawyer were sought or committed to enable or aid anyone to commit or plan to commit a crime or a fraud." First, there was no evidence which established the commission or planning of any crime. Second, to invoke the fraud provision of §956, Plaintiffs must establish a prima facie case of actual fraud and a reasonable relationship between the fraud and the attorney-client communication in question. See Cunningham v. Conn. Mut. Life Insur., 845 F. Supp. 1403, 1412 (S.D. Cal. 1994). During trial, Plaintiffs sought to invoke the crime/fraud exception on the ground that Pinch was "using counsel to help him engage in a fraudulent conveyance, which would be fraud under California Evidence Code 956...." A fraudulent conveyance does not necessarily require the commission of a fraud. A fraudulent conveyance can equally be accomplished with the intent to hinder or delay. Plaintiffs did not present a prima facie case of fraud at trial. Nor did Plaintiffs identify what specific conversations were subject to the exception. Rather than address this matter through a motion to compel discovery, Plaintiffs sought to accomplish this at trial by asking general questions regarding the content of attorney-client conversations. The crime-fraud exception does not result in a wholesale waiver of the attorney-client privilege, and the court did not feel that it was appropriate to conduct a lengthy, in camera review of privileged communications during trial. Id. at 1415.

[9] Curiously, the parties did not address the issue of whether the payments at issue were transfers by Pinch. Cooper LLC owned the Wyoming real property, and the sales proceeds were presumably its property. While there was some evidence from which to infer that Cooper LLC was Pinch's alter ego - i.e., Pinch was the sole LLC member and his funds were used to purchase the real property - Plaintiffs did not argue or present any concrete evidence on this issue. See In re Turner, 335 B.R. 140 (Bankr. N.D. Cal. 2005).

8

retained the law firm to vigorously defend himself in the damages phase of the litigation. If Pinch did not believe that the Plaintiffs were entitled to any damages, why would a payment to these attorneys indicate that he intended to hinder, delay or defraud their yet to be determined damages award?

Notwithstanding the above, Guenther & Duffy also established by a preponderance of the evidence their affirmative defense that they accepted the funds in good faith and for a reasonably equivalent value. See Cal.Civ.Code § 3439.08(a). Under this code section, a transferee lacks good faith if he or she "(1) colludes with the debtor or otherwise actively participates in the debtor's fraudulent scheme, or (2) has actual knowledge of facts which would suggest to a reasonable person that the transfer was fraudulent. Cybermedia, Inc. v. Symantec Corporation, 19 F. Supp. 2d 1070, 1075 (N.D. Cal. 1998). Ralph Guenther testified that he did not know where Pinch obtained the funds used to pay his firm's retainer, and, again, all of the evidence supports a finding that the firm accepted these funds based on its need for a substantial retainer for what it anticipated would be significant litigation (which it proved to be). These facts demonstrate to the court that Duffy & Guenther accepted the funds in good faith and provided significant value to Pinch.

### III. PLAINTIFFS ARE NOT ENTITLED TO IMPOSE A CONSTRUCTIVE TRUST

The court also will not impose any kind of constructive trust against defendants Rodriguez, O'Connell and Duffy & Guenther. The essence of the constructive trust theory is to prevent unjust enrichment and to prevent a person from taking advantage of his or her own wrongdoing. See PCO v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP, 150 Cal. App. 4th 384 (2007). As set forth above, the court finds that Rodriguez, O'Connell and Duffy & Guenther did not commit any wrongdoing, and that the payments which they received did not unjustly enrich them. Nor did Plaintiffs offer any evidence as to what res should be subject to the constructive trust. Accordingly, the court is denying any recovery on this claim for relief.

**IV. PLAINTIFFS HAVE NOT ESTABLISHED ANY RIGHT TO RECOVER AGAINST PINCH UNDER ITS CLAIMS FOR RELIEF IN THIS ADVERSARY PROCEEDING**

This court struck Pinch's answer and entered his default by order dated October 21, 2010. Plaintiffs, however, did not establish any right to recover against Pinch on the claims for relief herein. Accordingly, the court will not enter a separate judgment against Pinch. Entry of default does not automatically entitle a plaintiff to the entry of a judgment, regardless of the fact that the general effect of entry of default is to deem the allegations admitted. "Courts have wide discretion in deciding whether or not to enter a default judgment under Fed. R. Civ. P. 55, and the Rule itself authorizes the bankruptcy court to conduct such hearings 'as it deems necessary and proper.'" In re Beltran, 182 B.R. 820, 823 (BAP 9th Cir. 1995). This trial constituted such a hearing, and for the reasons stated above, the court does not find that Plaintiffs met their burden of proof.

**V. CONCLUSION**

Based on the foregoing, the court concludes that Defendants are entitled to judgment in their favor on each of Plaintiffs' claims. The parties are directed to confer and submit a proposed judgment consistent with this decision.

\* \* \* END OF ORDER \* \* \*

10

**MEMORANDUM DECISION FOLLOWING TRIAL**

Case: 08-05133   Doc# 147   Filed: 02/04/11   Entered: 02/04/11 15:00:07   Page 10 of 11

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Adversary Proceeding No. 08-5133

**COURT SERVICE LIST**

Brian L. Burchett
Sullivan, Hill, Lewin, Rez and Engel
550 West C. St. #1500
San Diego, CA 92101

Ralph P. Guenther
Law Offices of Duffy and Guenther
149 Bonifacio Pl.
Monterey, CA 93940

Leigh Rodriguez
Law Offices of Leigh Rodriguez
499 Calle Principal #3
Monterey, CA 93940-2723

Frank O'Connell
462 Webster St., #2
Monterey, CA 93940

David I. Kornbluh
Miller, Morton, Caillat and Nevis
25 Metro Dr, 7th Fl
San Jose, CA 95110
(408) 292-1765

11

**MEMORANDUM DECISION FOLLOWING TRIAL**
Case: 08-05133   Doc# 147   Filed: 02/04/11   Entered: 02/04/11 15:00:07   Page 11 of 11